IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHLEEN CARROLL**<br>49 South Park Avenue<br>Norristown, PA 19430<br><br>*Plaintiff,*<br><br>vs.<br><br>**HID GLOBAL CORPORATION**<br>c/o the Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>*Defendant.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby files the following Complaint against each Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendant, her employer, for unlawful age and gender discrimination and other applicable law.

### PARTIES

2. Plaintiff is Kathleen Carroll ("Plaintiff"), an adult individual currently residing at the above address.

3. Defendant, HID Global Corporation ("Defendant"), is believed and therefore averred to be a Delaware corporation with a registered agent for service of process at the above address.

4. At all times relevant hereto, each Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or his job duties.

## JURISDICTION and VENUE

5. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

6. The Court may properly maintain personal jurisdiction over each Defendant because each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

8. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

9. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because each Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the

claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

10. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

11. Plaintiff has satisfied the federal procedural and administrative requirements for proceeding with an action under Title VII.

12. Plaintiff filed timely written charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging discrimination on or about January 27, 2017 (Charge No. 530-2017-01123.

13. The instant action is timely because it is initiated at least ninety ("90") days after the issuance of a Right to Sue Letter by the EEOC on each charge which was mailed on or about March 14, 2017.

14. Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

15. Plaintiff will seek leave to amend this Complaint to plead claims under the Pennsylvania Human Relations Act at the end of end of the law's statutory one-year waiting period against Stefan Widing and Samuel Asarnoj individually as aiders and abettors.

## FACTUAL BACKGROUND

16. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

17. Plaintiff is a female with a date of birth of June 1, 1954.

18. Plaintiff began working for Defendant in or around July 31, 2006.

19. At the time of her EEO charge, Plaintiff was employed by Defendant.

20. On or about September 11, 2015, Plaintiff's title changed to Vice President- Government Affairs from Vice President- Corporate Affairs.

21. When Plaintiff's title changed, key responsibilities were taken away from her for no apparent reason.

22. Upon information and belief, no males working with Plaintiff were subjected to similar treatment.

23. On or about June 1, 2016, Plaintiff was demoted from reporting to the CEO of the company to reporting to the Senior Vice President of Corporate Strategy and Business Development, Samuel Asarnoj.

24. Upon information and belief, Asarnoj is under forty years old.

25. Upon information and belief, Asarnoj had no experience in government affairs or U.S. government business.

26. Plaintiff was singled out for this mistreatment because she is a female.

27. On or about June 24, 2016, in a personal meeting with Asarnoj, Kathy Alsbrooks and Wendy Reilly, Asarnoj repeatedly cut Plaintiff off while she was trying to explain to him the role of Government Affairs.

28. The attitude exhibited by Asarnoj was directed to Plaintiff solely because of his ongoing disrespect for women in general and Plaintiff in particular.

29. On or about September 2, 2016, weekly "Pulse" calls began with Asarnoj.

4

30. In the first call, Asarnoj told Plaintiff she was "tiring" because Plaintiff was excited about some opportunities within the federal government and the "tiger team" she was trying to build with her colleagues from all of Defendant's business units.

31. The colleagues Plaintiff was trying to collaborate with dealt with the federal government directly.

32. Plaintiff felt that the team would be more successful if they met with government contacts as a team rather than one by one.

33. Once again, Asarnoj singled out Plaintiff as a "tiresome" woman.

34. On or about September 10, 2016, during a weekly call with Asarnoj, he stated that Government Affairs was more than one million dollars over budget.

35. Plaintiff reacted with consternation because she is very careful with the budget.

36. Asarnoj told Plaintiff to calm down and that she was annoying because of her reaction.

37. It was subsequently discovered that Plaintiff was right and that others within the company were using Plaintiff's cost center for their expenditures.

38. Again, Plaintiff was treated as a "hysterical woman" who had overreacted by Asarnoj.

39. On or about September 19, 2016, during a meeting with the Government Services Administration ("GSA"), Asarnoj insulted the woman representing the agency.

40. Specifically, Asarnoj asked the woman if she thought she should be treated differently because the federal government was the largest U.S. customer of Defendant.

41. The representative for the government reacted as if she had been slapped.

42. On or about September 20, 2016, Plaintiff was asked to attend a Senior Leadership Meeting at noon.

43.  However, Asarnoj failed to inform Plaintiff that she did not need to be at the meeting until 2:30 PM.

44.  Plaintiff arrived at noon and Asarnoj told Plaintiff she had to leave.

45.  In front of all of Plaintiff's peers, Asarnoj proceeded to physically escort Plaintiff out of the room which was embarrassing, demeaning, humiliating and degrading.

46.  The sole purpose of Asarnoj's conduct was to embarrass and demean Plaintiff to show that she was unimportant because she is a woman.

47.  On or about October 14, 2016, Plaintiff began writing a script for her weekly calls with Asarnoj so as not to annoy or tire him.

48.  The weekly calls because a source of distress and distraction for Plaintiff.

49.  Instead of focusing on her job responsibilities, Plaintiff was worried about writing a script for her weekly call with Asarnoj.

50.  As the time for the weekly calls approached, Plaintiff felt herself tense up because she was worried she would stray from the script.

51.  If she did stray from the script, she knew that Asarnoj would criticize, humiliate and/or demean her further.

52.  On or about November 19, 2016, Plaintiff submitted a business plan for a go-to market strategy for the government, which was essentially a new business model.

53.  Asarnoj replied that he would read Plaintiff's "five pages" when he had the chance.

54.  By January 4, 2017, Asarnoj had read the business plan.

55.  Thereafter, he announced on January 16, 2017 a dedicated team of all males who developed a new business model for another part of the business.

56. The plan Plaintiff submitted was ignored in favor of the business plan developed by all men.

57. On or about December 13, 2016, Plaintiff was invited to a senior leadership meeting for five hours.

58. At the meeting, Plaintiff gave a presentation to her peers.

59. Asarnoj cut her off at the end of her presentation.

60. Asarnoj said Plaintiff was all over the place and that he would sum up the presentation even though he was subsequently unable to do the same.

61. Most of the senior leaders came up to Plaintiff afterwards and indicated that she had made the best presentation.

62. Asarnoj never interrupted any of his male direct reports during their presentations.

63. Once again, Asarnoj deliberately humiliated and embarrassed Plaintiff for no reason except that she is a woman.

64. On or about January 3, 2017, Plaintiff made an internal complaint to Michele DeWitt, the Senior Vice President of Human Resources about Asarnoj's abusive treatment towards Plaintiff because she is a woman.

65. DeWitt told Plaintiff that other women made similar complaints about Asarnoj.

66. DeWitt also said that Asarnoj had a problem with women.

67. Plaintiff asked to no longer report to Asarnoj and DeWitt told her to speak directly with him.

68. On or about January 4, 2017, Plaintiff had a face-to-face meeting with Asarnoj wherein she prepared a written script.

69. Part of the script was a request that Plaintiff no longer have to report to Asarnoj.

70. On or about January 16, 2017, Plaintiff received an e-mail from Stefan Wiiding, the CEO.

71. Widing said: Following your conversations with both Samuel and Michele in the last couple of weeks, we have discussed your feedback. We have every intention to try to find a constructive way forward within reasonable boundaries. I want to be clear that one of those boundaries is that there will be no organizational change related to the report of the Government Affairs function. I believe the most appropriate would be for your to come to Austin so that you and I can discuss this directly and in person. I will ask Gisela to reach out to you to find a suitable time for the meeting within the next couple of weeks."

72. On or about January 18, 2017, Plaintiff received a text from Gisela to set up a face-to-face meeting with Widing.

73. Plaintiff indicated that she could meet with Widing on February 7 or February 8, 2017.

74. Gisela told Plaintiff that was unacceptable and that she had to meet with Widing within the next two weeks.

75. On January 20, 2017, Plaintiff received a call from DeWitt wherein she received an ultimatum: continue to report to Asarnoj or come to a mutually agreeable parting of ways.

76. Plaintiff was required to respond by Sunday, January 22, 2017.

77. On January 23, 2017, Plaintiff agreed to meet with Widing on January 27, 2017.

78. Thereafter, Plaintiff was subjected to additional retaliation which is the subject of another EEO charge filed with the EEOC. Plaintiff will seek leave to amend to this Complaint to incorporate those allegations once a "right-to-sue" letter issues.

## COUNT I
## Title VII Violations

79. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

80. The foregoing conduct by the Defendant constitutes unlawful discrimination against the Plaintiff on the basis of gender.

81. The foregoing conduct by the Defendant constitutes unlawful retaliation against the Plaintiff.

82. The foregoing conduct by the Defendant constitutes an unlawful hostile-working environment.

83. As a result of the Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT II
## ADEA Violations

84. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

85. By virtue of her age, the Plaintiff is in the class of persons protected by the ADEA.

86. The foregoing conduct constitutes unlawful age discrimination and retaliation against the Plaintiff.

87. The foregoing conduct by the Defendant constitutes an unlawful hostile-working environment.

88. As a result of the Defendant's unlawful age discrimination and retaliation, the Plaintiff has suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against each Defendant and that it enter an Order as follows:

a. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on any basis prohibited under applicable federal and state law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to his by Defendant's actions as permitted by applicable law;

e. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to

    deter Defendant or any other employees from engaging in such misconduct in the future;

f. Plaintiff is to be accorded any and all other statutory and equitable and legal relief as the Court deems just, proper, and appropriate;

g. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

i. Plaintiff is to be granted such additional injunctive or other relief as he may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

j. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

k. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of the Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                                Respectfully submitted,

                                                KOLMAN ELY, P.C.

                                                /s/ W. Charles Sipio
                                      Timothy M. Kolman, Esquire
                                          Wayne A. Ely, Esquire
                                        W. Charles Sipio, Esquire
                                          414 Hulmeville Avenue
                                              Penndel, PA 19047
                              (T) 215-750-3134 / (F) 215-750-3138
                                            tkolman@kolmanlaw.net
                                                 wely@kolmanlaw.net
                                            wcsipio@kolmanlaw.net

                                                 *Attorneys for Plaintiff*

Dated: June 12, 2017